# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JERRY E. SMITH**
Martinsvills, Indiana

ATTORNEYS FOR APPELLEE:

**LANAE HARDEN**
**LAURA M. TAYLOR**
Harden Jackson, LLC

FILED

Aug 09 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DANIEL SANDLIN, ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No.  29A02-1110-DR-969 |
| ) | |
| TAMARA SANDLIN, ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE HAMILTONSUPERIOR COURT
The Honorable Daniel J. Pfleging. Judge
Cause No. 29D02-0903-DR-265

**August 9, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Several months after the dissolution of the marriage of Daniel Sandlin ("Father") and Tamara Sandlin ("Mother"), Father filed a verified motion for emergency hearing and modification of custody, and Mother filed a verified petition to modify child support. Following a hearing, the trial court entered an order which Father now appeals and Mother cross appeals.

Father does not challenge the trial court's order to modify child support, but raises two challenges to the trial court's calculations in doing so. We expand and restate Father's challenges as four issues: 1) whether the trial court improperly failed to conclude Mother voluntarily left her former job and thus failed to impute income to Mother; 2) whether the trial court miscalculated Mother's current income; 3) whether the trial court improperly failed to explicitly order that Father cease paying to Mother an annual clothing allowance for the children; and 4) whether the trial court incorrectly determined the number of overnights for which Father should receive parenting time credit toward his child support obligations. On cross appeal, Mother agrees with Father's assessment of and challenge to the trial court's determination of Father's parenting time credit and requests we make this correction without resorting to remand.

We conclude the trial court correctly did not impute income to Mother, but improperly failed to calculate Mother's current income based on the evidence, and improperly failed to explicitly order that Father cease paying to Mother a clothing allowance. We also conclude that, based on the parties' apparent appellate agreement, Father's parenting time credit should

2

be substantially reduced. Therefore, we reverse and remand with instructions for the trial court to review the evidence presented without the need to hold an additional hearing, and amend its order modifying child support as directed.

Facts and Procedural History

Father and Mother married in 1997, had three children during the marriage, and separated in 2009. In mid-2009, the trial court entered an order finalizing the parties' settlement agreement and dissolving their marriage. The 2009 order resolved division of property issues, ordered that the parties alternate available tax credits for the children, and resolved issues concerning the care and custody of the children. Specifically as to the care and custody of the children, the order granted joint legal custody, sole physical custody to Mother, and Father's visitation according to the Indiana Parenting Time Guidelines with several agreed upon exceptions. Father was ordered to pay $278 per week for child support, consistent with the child support obligation worksheet attached to the mid-2009 order. The order also detailed who shall pay what percentage or amount for the children's medical, dental, and optical insurance; uninsured medical expenses; uninsured orthodontic expenses; expenses for weddings; vehicles upon each turning the age of sixteen; summer camps during school breaks; and extra-curricular activities.

In August 2010, the trial court entered an order finalizing a mediated agreement between the parties which modified the allocation of parenting time; modified the parties' proportional payment for the children's health and dental insurance, extra-curricular activities, summer camps, and daycare; and stated that "Father will pay to Mother a clothing

3

allowance of $100 for each child twice a year for a total of $600 a year." Appellant's Appendix at 29.

In February 2011, following a confrontation between Father's wife and Mother, Father filed a verified motion for emergency hearing and modification of custody. Mother responded with a verified petition to modify child support. Following a hearing on these motions, the trial court entered an order in September 2011. This order denied modification of custody, but modified Father's weekday parenting time, described the parties' financial circumstances, and modified child support. Portions of the order relevant to the issues on appeal follow.

> 17. Mother's income has been reduced which is a substantial changes [sic] in circumstance warranting a child support modification. One year has elapsed since the child support order, and Father's current order of child support differs by more than 20% from the amount he should be paying under the Child Support Guidelines.
> 18. Mother was not able to keep her current position, which was taken by her assistant at a much reduced salary. Mother had the possibility of remaining with the company but only if she relocated to Kansas City and accepted a different position which required significant travel.
> 19. Due to the corporate reorganization described above and because a non-compete limited her employment opportunities, Mother started her own company, Aramat Consulting, . [sic]
> 20. Mother currently receives business income of $1,067.32 per week and has business expenses which are attributable to the production of that income. However, for purposes of calculating her income for child support purposes, Mother did not reduce her business income by her business expenses even though she would be entitled to do so under the Child Support Guidelines.
> 21. Father is also self-employed. When calculating his income, Father reduced his income by his business expenses.
> 22. To calculate child support Father's income was set at $2,258.00 per week.
> 23. The Court finds Mother's income to be $1,067.32 per week and Father's income to be $2,258.00 per week and hereby orders Father to pay child support in the amount of $374.00 taking into consideration Mother's payment of the

4

child-care costs for the children and the premiums for health insurance coverage for the children.

24. Uninsured medical, dental, orthodontic, and prescription expenses of the children shall be paid by the 6% Rule with Mother annually paying $1,838.00 of such expenses with the remainder split 67.9% to Father and 32.1% to Mother.

25. The children's extracurricular expenses shall be paid 67.9% by Father and 32.1% by Mother.

26. The parents shall continue to share the tax exemptions for the children as previously ordered.

27. Given the disparity in income between the parties, Father is ordered to pay a portion of Mother's attorney's fees in the sum of $3,750.00.

Id. at 9-10.

Father now appeals and Mother cross appeals.

## Discussion and Decision

### I. Standard of Review

Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. See McGill v. McGill, 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. See id. The trial court is vested with broad discretion in making child support determinations. Carter v. Dayhuff, 829 N.E.2d 560, 569 (Ind. Ct. App. 2005). A calculation of child support under the Guidelines is presumed to be valid. McGill, 801 N.E.2d at 1251.

We will reverse a trial court's grant or denial of a request for modification of child support only where the court has abused its discretion. Carter, 829 N.E.2d at 569-70. An abuse of discretion occurs when the trial court misinterprets the law or the decision is clearly

5

against the logic and effect of the facts and circumstances before the court. Id. We do not reweigh the evidence or judge the credibility of the witnesses upon review; rather, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. at 570.

## II. Child Support

Child support orders may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable," or upon a showing that "(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines," and "(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed." Ind. Code § 3l-16-8-l(b).

## A. Imputation of Income to Mother

Trial courts may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed. Matter of Paternity of Buehler, 576 N.E.2d 1354, 1355-56 (Ind. Ct. App. 1991). The Child Support Guidelines permit imputation to discourage parents – both the payor-non-custodial parent and the recipient-custodial parent – from avoiding significant child support obligations by becoming unemployed or taking a lower paying job. See id. But the Guidelines do not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential.

Id. "It is not our function . . . to approve or disapprove of the lifestyle of [parents] or their career choices and the means by which they choose to discharge their obligations in general." Id. "To determine whether potential income should be imputed, the trial court should review the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." Homsher v. Homsher, 678 N.E.2d 1159, 1164 (Ind. Ct. App. 1997).

The record reveals sufficient basis for the trial court to not impute income to Mother. Mother earned slightly less than $80,000 in 2009, and was on pace to make more than that in 2010 when she left her position as branch director of Favorite Healthcare Staffing to start her own company, Aramat Consulting. At Favorite Healthcare, Mother was a branch director and director of operations responsible for management, recruitment, hiring, retention, and sales in Indiana. Her work at Aramat is substantially similar.

Mother testified regarding Favorite Healthcare's reorganization of some of its staff and responsibilities prior to Mother leaving. This includes her testimony that her direct supervisor was demoted and that another supervisor, who was a regional director, was repositioned to become a branch director in Portland[1] with a salary reduced by more than two-thirds. Mother also testified that upon leaving Favorite Healthcare, her assistant took over her position for an annual salary of $32,000, which Mother "was told was more

---

[1] The record does not indicate if this refers to Portland, Indiana, or another Portland in the United States.

7

comparable for the position."[2]  Tr. at 104.  Mother stated that there might have been an opportunity for her to remain at Favorite Healthcare and be paid the same salary, but she would be reassigned to a position managing vendors, which Mother noted she had "already done"; the position would be in Kansas City, so it would require her relocation; and the position would involve her traveling seventy-five percent of the time.  This description of the potential Kansas City opportunity suggests Mother was focused on advancing her career by taking on new responsibilities in a position which did not require relocation or extensive travel.  See id. at 94 (Mother stating that while running Aramat she can vary her hours according to the children's activities and needs).

Mother testified that she began to consider other employment options in June 2010.  She explored returning to a career in nursing, but concluded her potential income as a nurse would be too low for her to support her family.  She began to explore working at a company similar to Favorite Healthcare, but due to a one-year non-compete clause in her Favorite Healthcare contract, she stopped exploring this and other similar companies and decided to start Aramat.  She also noted that she did not consider seeking unemployment benefits to be a viable option because she felt a need to personally provide for her children.  Id. at 119-20.

Father argues Mother "rush[ed]" to quit and should have stayed at her former position until she was terminated or "received some unsatisfactory change to her former job."  Brief of Appellant at 11.  But the law does not require her to have waited.  Whether Mother chose

---

[2] The potential lack of reliability of the hearsay statement regarding the appropriate value of Mother's position is irrelevant for our analysis.  We will consider this evidence as if it were not hearsay because a challenge was not preserved with a contemporaneous objection, and we do not discount its reliability for lack

8

to leave her job or was fired is only one part of the trial court's broader determination of whether Mother's employment and income circumstances changed due to a desire to avoid significant child support obligations by becoming unemployed or taking a lower paying job. Mother's testimony explaining the circumstances which led to her leaving Favorite Healthcare and starting Aramat supports the trial court's apparent conclusion that Mother did not so intend, and that income should not be imputed to Mother.

### B. Calculation of Mother's Income from Aramat

Father next argues the trial court miscalculated Mother's income from Aramat. In support, he refers us to portions of the transcript of Mother's testimony and Aramat invoices which Mother submitted to the trial court. He also points out the fluctuation of Mother's income and argues Mother's reports are suspicious and somewhat fraudulent because her fiancé's business is one of Aramat's two clients. While we agree that the patronage of Aramat by Mother's fiancé makes the amount of her income somewhat suspicious, especially as one of two clients, we decline to reweigh the evidence and conclude that the trial court's decision is clearly against the logic and effect of the facts and circumstances in this regard.

We acknowledge that there is some inconsistency in the evidence regarding Mother's current income. Mother's testimony suggests a weekly income of about $1,154 per week, Aramat invoices in total suggest a weekly income of about $1,286 per week, and Aramat invoices based on the last three months (February, March, and April) suggest a weekly income of about $1,154 per week. We refer to the last three months because those could be

of further detail because we do not weigh the evidence or judge the credibility of witnesses.

9

the most relevant and Mother received the same amount for each of the last three months after several months of fluctuating payment from one of her clients, so it appears to be a new, regular rate. We refrain from finding or concluding that the trial court must use the number for the last three months, and we note that one of Mother's clients paid her two February payments and no March payment, which suggests some error because this client paid $2,000 each of the four previous months (October through January) and again for the following month, April. We refrain from finding or concluding that this was an error, but point this out for the trial court's benefit.

In any event, there is no evidence in the record which suggests Mother's income is about $1,067 per week, as the trial court found and used to calculate the parties' child support obligations. The only portion of the record where this number appears is Mother's child support obligation worksheet. Therefore, we remand with instructions for the trial court to evaluate the evidence heretofore presented and determine Mother's current income.

### C. Clothing Allowance

Father argues the trial court erred in not explicitly eliminating Father's obligation to pay to Mother an allowance for the children's clothing of $600 per year. Mother agrees and notes that she does not read the trial court order to require Father's continued payment of the clothing allowance. Brief of Appellee and Cross-Appellant at 9-10 n.2. We also agree, and remand with instructions for the trial court to explicitly order that Father is no longer required to pay to Mother a clothing allowance.

10

D.  Father's Parenting Time Credit

Under Child Support Guideline 6, a non-custodial parent is afforded "credit" to his or her child support obligation for hosting his or her children overnight.  The credit is based upon the number of overnights a child or children spends with the non-custodial parent.  Grant v. Hager, 868 N.E.2d 801, 802 (Ind. 2007).  "If the court determines it is necessary to deviate from the parenting time credit, it shall state its reasons in the order."  Ind. Child Support Guideline 6 (cmt.).

On appeal Father and Mother agree that the trial court erred in calculating the number of overnights for which Father should receive credit, 181, and also agree that the correct number for which Father should receive credit is 113.  We therefore remand to the trial court with instructions to adjust Father's parenting time credit to 113 days without holding a hearing.

Conclusion

The trial court did not abuse its discretion by declining to impute income to Mother.  We reverse and remand, however, with instructions for the trial court to evaluate the evidence presented and calculate Mother's current income, and to reduce Father's parenting time credit to 113 overnights.  Upon doing so, we order the trial court to recalculate the parties' child support obligations without the necessity of holding another hearing, and explicitly order that Father cease paying to Mother a clothing allowance.

Reversed and remanded.

BAILEY, J., and MATHIAS, J., concur.

11