**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 27 2014, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW MICHAEL WILKERSON**
Rowdy G. Williams Law Firm, P.C.
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**CAITLIN M. MILLER**
Hunt, Hassler, Lorenz & Kondras, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE MARRIAGE OF TERRI L. POTTER )
AND BRENT D. POTTER: TERRI L. POTTER, )
                                     )
    Appellant-Petitioner, )
                                     )
          vs. )   No.  11A01-1304-DR-229
                                     )
BRENT D. POTTER, )
                                     )
    Appellee-Respondent. )

APPEAL FROM THE CLAY SUPERIOR COURT
The Honorable Michael R. Rader, Special Judge
Cause No. 11D01-1102-DR-66

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

T.P. ("Mother") appeals the denial of her motion to correct error, which challenged the property division and child support order entered in the dissolution of her marriage to D.B.P. ("Father"). We affirm.

**Issues**

Mother presents the following consolidated and restated issues:

I.      Whether the dissolution court abused its discretion in the determination of assets and liabilities comprising the marital pot;[1]

II.     Whether the dissolution court abused its discretion in its determination of Father's income available for child support; and

III.    Whether the dissolution court abused its discretion in denying Mother's claim for reimbursement of extraordinary expenses.

**Facts and Procedural History**

The parties were married on April 13, 1990. They had two children, B.P. (born in 1991), and L.P. (born in 1995). On February 7, 2011, Mother filed a petition to dissolve the marriage. B.P. lived independent of his parents and L.P. remained with Mother in the former marital residence. Father moved to a second property owned by the parties.

The first of three evidentiary hearings took place on March 9, 2012. At that time, the parties stipulated that their personal property had been divided. Attorneys for the respective parties advised the dissolution court that the parties were in possession of two residences, one

---

[1] Mother articulates an additional issue as follows: "Whether the Trial Court abused its discretion when it found that a presumptive equal property division was warranted." Appellant's Brief at 1. However, she does not develop this issue, and we observe that she requested an equal division of the marital assets. Mother may not complain of alleged error she has invited. See Balicki v. Balicki, 837 N.E.2d 532, 541 (Ind. Ct. App. 2005), trans. denied. It appears that her actual complaint is that the dissolution court abused its discretion in deciding what assets and liabilities were includable in the marital pot for division.

2

over-financed and the other having approximately $20,000 in equity; a joint bankruptcy petition had been filed one day earlier – with the primary objective of discharging debt for numerous consumer charge card accounts; and the principal asset of the parties was retirement funds. These retirement accounts consisted of husband's account worth $5,892 and Wife's deferred compensation account worth $42,952, her annuity worth $23,387 and her pension having a present net value of $39,117. At that time, Father was unemployed and Mother was employed as a teacher in Clay County Schools. It was stipulated that Father had paid child support to Mother through May 20, 2011. The parties had alternated paying health insurance premiums for L.P.

After hearing evidence, the court took the matter of property division under advisement pending the anticipated discharge in bankruptcy. The court declined to enter a specific child support order against Father at that time, stating that credible evidence had been presented that Father had suffered depression so extreme that he was unable to work.

On May 25, 2012, a second hearing was conducted, at which the parties' bankruptcy attorney testified. He testified that Mother was residing in the property with negative equity and he had advised her not to re-affirm the property in bankruptcy proceedings. Rather, it was Mother's apparent intention to continue making payments and residing at the property without a legal obligation to do so. Father was remaining at the second property, which had been re-affirmed in the bankruptcy proceedings. Father testified that he had recently obtained unemployment compensation benefits of $390 per week. He proposed that his child support be calculated with that amount as his gross income while Mother proposed that

Father's gross income available for child support purposes should be equal to his salary when last employed.

On August 23, 2012, the final hearing was held. The bankruptcy discharge had been entered and the controversies between the parties distilled to what, if any, income should be imputed to Father for child support purposes, what amount he might pay for L.P.'s expenses listed by Mother on an evidentiary exhibit, whether a horse in Father's possession should be surrendered to L.P., and whether the parties should share: the teacher's retirement account, a claimed debt to Mother's parents, bank account funds originating from Father's father (then deceased), and the mortgage of the property surrendered in bankruptcy but informally retained by Mother.

The dissolution court determined that the marital pot should include the real property formally re-affirmed in bankruptcy, all pension funds, and the bank account in Father's control. The real property surrendered in bankruptcy and the familial debt listed and discharged in bankruptcy were not included in the marital pot. As for the horse, the dissolution court considered it to be personal property subject to the parties' stipulation that they had divided such property. The court determined that an equal division of the marital pot was just and equitable; Mother was given credit for significant payments made on charge accounts after separation of the parties but prior to the bankruptcy discharge. The dissolution court anticipated that Father would receive a share of the teacher's pension funds as "an alternate payee." (App. 37.)

4

The parties filed respective motions to correct error. At the February 22, 2013 hearing on the motion to correct error, the dissolution court acknowledged that Father could not be treated as an alternate payee of the teacher's retirement funds. On March 26, 2013, the court entered an Amended Final Decree of Dissolution. Ultimately, Mother was to pay Father $26,563.00 as an equalization payment and Father was to pay Mother $3,920 as child support arrearage. He was ordered to pay $79 weekly as child support. The calculation was based upon imputed income of $10 per hour. However, the arrearage award did not include an assessment for six months when Father was undergoing treatment for depression.[2] Also, Father was not ordered to contribute to L.P.'s expenses claimed by Mother as extraordinary expenses beyond basic child support.

Mother now appeals.

**Discussion and Decision**

Property Division

The division of marital property involves a two-step process. Thompson v. Thompson, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), trans. denied. First, the trial court must determine what property is to be included in the marital estate, or marital pot. Id. Second, the trial court must divide the marital property under the presumption that an equal split is just and reasonable. Id. (citing Ind. Code § 31-15-7-5).

The division of marital assets lies within the sound discretion of the trial court, and we reverse only for an abuse of discretion. Hartley v. Hartley, 862 N.E.2d 274, 284 (Ind. Ct.

---

[2] During this time, Father paid L.P.'s health insurance premiums of $24.16 per week.

App. 2007). A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our considerations on appeal. Id. We do not reweigh the evidence or assess the credibility of the witnesses, but consider only the evidence most favorable to the trial court's disposition of the marital property. Id. Finally, we do not substitute our judgment for that of the dissolution court even where the facts might allow for a different conclusion. Id.

All marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. I.C. § 31-15-7-4(a); Hill v. Hill, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007). Property acquired by a spouse after the final separation date is excluded from the marital estate. Thompson, 811 N.E.2d at 912. The trial court is also required to divide the marital debt. See Moore v. Moore, 695 N.E.2d 1004, 1010 (Ind. Ct. App. 1998). Mother contends that the court erred in determining the makeup of the marital pot in several respects.

Pension Inclusion.

"Property" for purposes of dividing the marital pot includes:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage[.].

6

I.C. § 31-9-2-98(b). Whether a right to a present or future benefit constitutes an asset that should be included in the marital pot depends mainly upon whether it has vested by the time of dissolution. Bingley v. Bingley, 935 N.E.2d 152 (Ind. Ct. App. 2010). In order for a future pension benefit to be considered marital property in Indiana, the right to the pension must not be contingent upon future employment. Hann v. Hann, 655 N.E.2d 566 (Ind. Ct. App. 1995), trans. denied. However, vested retirement pensions which are not forfeited upon employment termination and are contingent upon the retiree's survival are considered part of the marital pot. Schueneman v. Schueneman, 591 N.E.2d 603, 608 (Ind. Ct. App. 1992).

Here, the parties stipulated that Mother's pension was vested. She testified that she would receive a monthly payment at age sixty-five, if retired, regardless of whether she continued employment with the Clay County Schools. Counsel for both parties advised the dissolution court that they had been in contact with the plan administrator, who placed a present net value of the account that was to provide a future income stream at $39,117. No evidence of a different value was presented.

Mother now claims that her pension funds are subject to forfeiture and that Father will receive a windfall if she dies before reaching full retirement age, in that he is currently entitled to the equalization payment regardless of her survival. She did not present evidence of divestiture or forfeiture at the hearings. Instead, Mother's theory was that Father should not share in the disputed pension funds because she had maintained stable employment while Father allegedly displayed less frugality and economic foresight. Her new argument that the asset is speculative and non-divisible because she may die before age sixty-five is neither

7

supported by the evidence of record or the applicable law. The dissolution court did not abuse its discretion by including the pension in the marital pot.

Exclusion of Debt to Mother's Parents and Liability for Former Marital Residence.

Mother asserts that Father should have been held liable for one-half of loan indebtedness due to her parents. Mother's mother testified that, in 1984, she and her husband had loaned the couple $6,000 for a down-payment on real estate and later had loaned $15,000 for the purchase of the marital residence and $3,000 for the purchase of a vehicle. She testified that she had received some payments but decided to allow payback upon sale of the real estate. She claimed entitlement to $25,000 to $30,000, including interest. There were no documents evidencing the loan.

In the bankruptcy proceedings, a debt to Mother's parents was listed as an unsecured debt, with a notation that Father disputed the validity of the debt. Father was discharged as to any liability for this debt. Mother elected, during the bankruptcy proceedings and after the filing of the petition for marital dissolution, to re-affirm the debt individually. Accordingly, to the extent that a collectible debt exists, it is a post-petition debt of Mother, a liability not properly included in the marital pot. See Fuehrer v. Fuehrer, 651 N.E.2d 1171, 1774 (Ind. Ct. App. 1995) (recognizing that debts incurred by one party after the marital estate closes – generally on the date of filing – are not to be included in that estate), trans. denied.

As for the alleged liability for a mortgage on the former marital residence, there is uncontroverted evidence that neither party reaffirmed the mortgage and the debt was discharged in bankruptcy proceedings. Mother testified that she was not legally obligated to

8

pay for the house. Rather, she hoped to be allowed to remain in the residence if she made regular payments because the house was over-financed and a poor subject for foreclosure and resale by the mortgagor. Because Mother did not show the existence of a legal obligation of the parties, the dissolution court was not obliged to include the claimed debt in the marital pot.

Exclusion of Horse.

Mother maintains that Father was erroneously permitted to keep a horse valued at $6,000 without accounting for its value. At the initial hearing, counsel for both parties advised the court that the personal property had been divided. Mother continued to refer to a horse as L.P.'s horse and the dissolution court sought clarification:

Court: All the personal property, you've already taken care of it. Is that true?

Mother's Counsel: Yes Your Honor. …

Court: Okay and that includes the horses.

Father's Counsel: Yes.

Mother's Counsel: Well he indicated that the horses weren't in anybody's name so I guess their [sic] not. He stated they are not marital assets.

Court: Well I guess the question is though were they taken into consideration when you divided personal property?

Mother's Counsel: Yes.

Father's Counsel: Yes.

Mother's Counsel: We did talk about the horses in dividing personal property.

(Tr. 161.)

9

On appeal, a party is precluded from taking advantage of invited error, or error in which she acquiesced. See Balicki, 837 N.E.2d at 541 (observing that the doctrine of invited error is grounded in estoppel and prevents a party from taking advantage of error he or she commits, invites or is the natural consequence of his or her own negligence or misconduct). We need not entertain Mother's allegation that the dissolution court failed to include an item of personal property within the marital pot, in light of counsel's representation that personal property had been considered and divided.

Moreover, the record supports the dissolution court's conclusion that L.P. made no claim to the horse. L.P. did not testify or assert her ownership of the animal. Father testified that, although the horse was not registered to L.P., it had originally been purchased as her eleventh birthday present, but she had shown no interest in the horse in several years. It had been maintained by Father and pastured with horses that were left in his care when his father died and his mother was placed in a nursing home. According to Father, he left almost all household furnishings and items to Mother with the understanding that the gift horse was to remain with him. We find no error in the court's decision not to include the value of the horse on the balance sheet of assets and liabilities to be divided.

## Child Support

Mother also contends that the dissolution court awarded an insufficient amount of current child support and child support arrearage. The dissolution court found that Father was unable to work for the period of May 20, 2011 through November 1, 2011, and was not liable for child support during that period beyond the insurance premiums paid for L.P. As to

10

the remaining time, the court imputed income to Father of $10 per hour (roughly equivalent to the amount of his unemployment benefits) although Mother had requested that the dissolution court impute income equivalent to Father's last salary of $634 weekly.

Child support calculations are made using the income shares model set forth in the Indiana Child Support Guidelines ("Guidelines"). Sandlin v. Sandlin, 972 N.E.2d 371, 374 (Ind. Ct. App. 2012). The Guidelines apportion the cost of supporting children between the parents in accordance with their means, based upon the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. Id. A trial court's calculation of child support under the Guidelines is presumptively valid and we will reverse a decision in child support matters only if it is an abuse of discretion, that is, when the trial court misinterprets the law or the decision is clearly against the logic and effect of the facts and circumstances that were before the court. Id.

A trial court may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed. Id. at 375 (citing Matter of Paternity of Buehler, 576 N.E.2d 1354, 1355-56 (Ind. Ct. App. 1991)). The Guidelines permit imputation to discourage parents from avoiding significant child support obligations by becoming unemployed or taking a lower paying job; however, the Guidelines do not require that parents work to their full economic potential. Id.

Here, there was testimony from both parents regarding the significant events that led to Father's loss of employment. In a short span of time before Mother petitioned to dissolve

11

the marriage, Father suffered the loss of his father to aggressive pancreatic cancer, and had to admit his mother and grandparents to nursing care facilities. Father's mother accused Father of hastening his father's death by providing substandard care and Father reportedly had found this accusation devastating. Father also suffered the loss of a close friend and had experienced strained relationships with his children. At some point, he stopped going to work and was fired. Father sought treatment through Vista Care hospice services, the Hamilton Center, and one Dr. French. He was diagnosed with a major depressive disorder and was prescribed several medications. Father continued to receive counseling services, including grief therapy, for several months.

Mother directs our attention to testimony that Father had answered an interrogatory indicating that his mental health was "fine," he had been able to perform farm work for a friend, and he had made limited efforts to obtain new employment during a several-month period. Appellant's Brief at 10. In essence, Mother requests that we reweigh the evidence to find that Father was never debilitated by depression such that he could not maintain employment at his previous level. The record reveals a sufficient basis for the limited imputation of income to Father, and we decline the invitation to reweigh the evidence.

Denial of Contribution to Extraordinary Expenses

Mother submitted an exhibit detailing "Expenses for [L.P.]" for which she sought contribution from Father. (App. 85.) The listed expenses were as follows:

| | |
|---|---|
| Optometrist | $ 565 |
| Orthodontist | 530 |
| Phone | 610.69 |
| Volleyball Camp | 435 |

| | |
|---|---|
| Volleyball Equipment | 81 |
| Sports Uniforms | 179.79 |
| Sports Physical | 236.25 |
| Sports letter jacket | 236.68 |
| Book rental fees | 188.57 |
| School photography | 41 |
| School clothes | 1,696.02 |
| Health Insurance | 3,383.97 |
| Personal Grooming | 663 |
| Formal Dance Dress | 864.96 |
| School Lunches | 870 |
| Auto Insurance | 330 |
| Life Insurance | 213.85 |
| Auto/Fuel Cost | 416.36 |
| | $11,542.14 |

During testimony, Mother admitted that some of the expenses were taken into account by the Guidelines computation of child support; for example, each parent was credited with health insurance premiums on the child support worksheet and each was ordered to pay a proportional share of uninsured medical expenses. Additionally, Mother admitted that certain of the expenses were duplicative of those for which child support was awarded, for example, school book fees, clothing, school lunches, and grooming. There were extra-ordinary expenses for sports; however, the evidence established that Mother and Father had not agreed to these.

The Guidelines indicate that, where parents agree to their child's participation in optional activities, the parents should pay a pro rata share and, in the absence of such an agreement, the court should take into account factors such as each parent's ability to pay, which parent encourages the activity, historical participation, and the reasons for encouragement or opposition. Ind. Child Support Guideline 8.

13

Here, the dissolution court commented upon Father's limited resources and declined to order his contribution to the claimed extra-ordinary expenses. We observe that several of the claimed expenses, such as for food, clothing, grooming, and school books, are not extra-ordinary. It is also clear from the evidence presented that Father could not afford a separate vehicle for his child. The vehicle and cell phone are typical expenses a family of limited means might expect their teenager to forego or afford by obtaining after-school employment. The expenses for the optional activity of volleyball are in excess of $1,000 and are the type of educational extra-curricular expense that parents might well agree to cover, proportional to their incomes. Here, however, there was no such agreement. We do not find, given Mother's superior income, her encouragement that L.P. participate in a sport, and the lack of consultation with Father (who has limited resources) that the dissolution court abused its discretion.

## Conclusion

Mother has not established that the dissolution court abused its discretion in the division of marital assets or the award of child support.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

14