**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2015, 9:05 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Jennifer Irons
Cedar Lake, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shellie S. Gryniewicz f/k/a Shellie S. Shih,<br>*Appellant,*<br><br>v.<br><br>Daniel Shih,<br>*Appellee,* | May 27, 2015<br><br>Court of Appeals Case No.<br>45A03-1412-DR-437<br><br>Appeal from the Lake Circuit Court<br>The Honorable George C. Paras,<br>Judge<br>Trial Court Cause No. 45C01-0708-<br>DR-652 |

**Bradford, Judge.**

# Case Summary

Appellant Shellie S. Gryniewicz, formerly known as Shellie S. Shih, ("Mother") and Appellee Daniel Shih ("Father") divorced in 2008. They are the parents of a minor child (the "Child"). In December of 2013, both Mother and Father

filed petitions relating to Father's child support obligation and his ability to exercise parenting time with the Child. During an evidentiary hearing, which was conducted in summary fashion, the trial court heard argument relating to Mother's apparent reluctance to allow Father to exercise parenting time with the Child. The trial court also heard argument relating to Mother's and Father's respective economic situations. The trial court issued an order on November 17, 2014, setting Father's child support obligation at $109.00 per week and ordering Mother to pay certain fees, including Guardian Ad Litem ("GAL") fees and a portion of Father's attorney's fees.

[2] On appeal, Mother contends that the trial court erred in setting Father's child support obligation at $109.00 per week and in ordering her to pay the GAL's fees. Mother also contends that the trial court abused its discretion in ordering her to pay a portion of Father's attorney's fees. Finding no clear error or abuse of discretion by the trial court, we affirm.

## Facts and Procedural History

[3] The Child was born on April 3, 2005. On or about September 22, 2008, Mother and Father (collectively, "the parties") divorced. According to the terms of the parties' divorce decree, the parties had joint legal custody of the Child with Mother having primary physical and Father having visitation in accordance with the Indiana Parenting Time Guidelines.

[4] On December 10, 2013, Mother filed a verified petition to modify Father's child support obligation and Father's allocated visitation with the Child. Mother additionally sought a reallocation of certain expenses. Mother also filed a verified petition requesting that a GAL be appointed to represent the Child's interests.

[5] Also on December 10, 2013, Father filed an application for a temporary restraining order and injunction, requesting relief from Mother's alleged attempts to interfere with his parenting time rights. On December 16, 2013, the trial court granted Father's application for a temporary restraining order. The trial court also set forth certain "phase-in" visitation rights for Father. Appellant's App. p. 36. Father subsequently alleged that Mother refused to allow parenting time pursuant to the court's order and filed a petition to compel Mother's compliance with the parenting time ordered by the court. On June 16, 2014, Mother filed a request that the trial court conduct an evidentiary hearing on her December 10, 2013 petition.

[6] On July 10, 2014, the trial court issued an order stating that Mother was "ordered and compelled to immediately comply with and provide Father with all of his court ordered parenting time." Appellant's App. p. 46. The trial court also appointed a GAL. The trial court ordered Mother to pay the GAL's fees and expenses, which would be subject to potential reallocation by the trial court.

On October 2, 2014, the parties entered into an agreed order which covered some of the parties' contested issues. In this agreed order, the parties agreed that "the Parenting Time Guidelines, including overnights for Father, are not currently appropriate due to the current situation with the minor child, but they agree to the appointment of a Parenting Time Coordinator." Appellant's App. p. 55. The agreed order also indicated that Dr. Marguerite Rebesco shall act as a mental health consultant to the Parenting Time Coordinator, Dr. Rebesco shall not be involved as a therapist for either party or the Child, and that the parties shall equally divide all of Dr. Rebesco's fees and expenses relating to her attendance and participation at the hearing on October 2, 2014, her retainer, and any future services. The agreed order also appointed a Parenting Time Coordinator and indicated that the parties shall fully comply with the recommendations of the Parenting Time Coordinator. Pursuant to the terms of the agreed order, Dr. Rebesco and the Parenting Time Coordinator were granted the authority to consult with the Child's psychiatrist for the purpose of creating a unified treatment plan.

On October 28, 2014, the trial court conducted an evidentiary hearing on the remaining contested issues. The parties agreed that the hearing would be conducted in summary fashion. During the evidentiary hearing, the parties presented evidence and argument relating to Father's child support obligation, Father's visitation with the Child, payment of the GAL's fees, and payment of the parties' attorneys' fees. Father's attorney also argued that the case had been drawn out because of Mother's hesitance to comply with the recommendations

of the various therapists who recommended that Father gradually be awarded visitation with the Child. For Mother's part, Mother's attorney argued that Mother was willing to allow Father to exercise parenting time so long as the parenting time did not include overnight visits, which Mother did not believe were appropriate at the time.

On November 17, 2014, the trial court issued an order setting Father's child support obligation at $109 per week. In reaching this obligation, the trial court imputed full-time income to Mother and awarded Father credit for 103 overnight visits per year. The trial court denied Mother's request for the cost of after-school daycare, denied Father's request to reduce the total basic child support obligation by 31% due to Mother's living arrangements, ordered that Mother shall be responsible for payment of all sums due to the GAL, denied Mother's request that Father be ordered to pay her attorney's fees, and ordered Mother to pay a portion of Father's attorney's fees. Mother now appeals.

# Discussion and Decision

## I. Child Support

Mother appeals the trial court's order modifying Father's child support obligation. On appeal, Mother contends that the trial court's child support determination is erroneous for two reasons: (1) the trial court erroneously granted Father credit for 103 nights of overnight visitation when the parties' agreed order specifies that Father does not currently have any overnight

visitation with the Child; and (2) the trial court erroneously imputed income to Mother.

## A. Standard of Review

Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *See McGill v. McGill,* 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *See id.*

*Sandlin v. Sandlin*, 972 N.E.2d 371, 374-75 (Ind. Ct. App. 2012).

On review, "[a] trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind.2008) (citing *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006)). "[R]eversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court." *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind. 1994) (citing *Humphrey v. Woods*, 583 N.E.2d 133, 134 (Ind. 1991)). Upon the review of a modification order, "only evidence and reasonable inferences favorable to the judgment are considered." *Kinsey*, 640 N.E.2d at 44 (string citation omitted). The order will only be set aside if clearly erroneous. *Id.*

*Bogner v. Bogner*, --- N.E.3d ----, 2015 WL 1944252 at *4 (Ind. Apr. 28, 2015).

## B. Analysis

Initially, we note that where, as here, a hearing is conducted in summary fashion, formal rules of evidence are not observed. *Id*. at ----, 2015 WL 1944252 at *5.

Summary proceedings function to efficiently resolve disputes by allowing parties and the court to forego the use of formal rules of procedure and evidence and instead allow the court to base its findings and conclusions upon the arguments of counsel and limited evidence. Summary proceedings commonly take place when parties are not disputing essential facts, but rather the legal outcome compelled by those facts. This Court has recognized that

> [W]hile summary proceedings—when properly agreed to—can be beneficial in deciding matters of custody and parenting time to minimize the negative impact on the children, such summary proceedings may be less appropriate where the parties are *vigorously contesting every facet* of the process and appear incapable of approaching these decisions in a civil or cooperative manner.

*Wilson v. Myers,* 997 N.E.2d 338, 342 (Ind. 2013) (emphasis added).

*Id*.

[14] With respect to the Indiana Child Support Guidelines, the Indiana Supreme Court has reiterated the following:

> The Indiana Child Support Guidelines serve three objectives: 1) establish an appropriate level of support for children, based on each parent's ability to contribute to that support; 2) increase consistency in support levels for those in similar circumstances; and 3) improve efficiency by encouraging settlements and giving both the court and the parties guidelines for setting awards. Ind. Child Supp. G. 1. To reach these goals, child support is calculated under the Guidelines "as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an intact household." *Id*. However, the support award under the Guidelines is not binding upon the parties or the court. Rather, "[i]f the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion." Ind. Child Supp. G. Supp. R. 3. However, the findings required "need not be as formal as Findings of Fact and Conclusions of Law; the finding need only articulate the

judge's reasoning." Ind. Child Supp. G. 1 Cmt. Furthermore, the "Guidelines are not immutable, black letter law," but provide "room for flexibility." *Id.*; *See also Garrod v. Garrod*, 655 N.E.2d 336, 338 (Ind. 1995).

*Id*. --- N.E.2d at ----, 2015 WL 1944252, at *4.

### *1. Parenting Time Credit*

"Indiana Child Support Guideline 3(G)(4) provides that trial courts 'may grant the noncustodial parent a credit toward his or her weekly child support obligation … based upon the calculation from a Parenting Time Credit Worksheet.'" *Young*, 891 N.E.2d at 1047 (ellipses in original). "Under Child Support Guideline 6, a non-custodial parent is afforded 'credit' to his or her child support obligation for hosting his or her children overnight." *Sandlin*, 972 N.E.2d at 377. "The credit is based upon the number of overnights a child or children spends with the non-custodial parent." *Id.* (citing *Grant v. Hager*, 868 N.E.2d 801, 802 (Ind. 2007)).

In determining what constitutes an overnight visit for the purpose of awarding the non-custodial parent credit, the Indiana Supreme Court has stated the following:

> The Child Support Guidelines contain a formula for calculating parenting time credit based upon the total number of "overnights" per year that the noncustodial parent spends with the children. Child Supp. G. 6 Table PT. In explaining the term "overnight," the commentary to the guidelines provides that
>
> > [a]n overnight will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities. It should include, however, the costs of

> feeding and transporting the child, attending to school
> work and the like. Merely providing a child with a place
> to sleep in order to obtain a credit is prohibited.

Child Supp. G. 6 cmt.

We take the gist of this comment to be that not all visits in which a child stays overnight may qualify for the parenting time credit. Still, neither this comment nor any other portion of the guidelines suggests that a visit may qualify as an overnight if the child does not physically stay overnight with the noncustodial parent. If the able and careful drafters of the guidelines had intended for non-overnight visits in which the noncustodial parent provides the children with transportation from school and to and from their activities, feeds them, and does homework with them to qualify for parenting time credit, the guidelines could have easily included those visits in the formula.

The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden of the custodial and noncustodial parents in caring for the children. Because calculating the amount of financial burden alleviated by an overnight visit is difficult, the guidelines provide a standardized parenting time credit formula. Credit is not provided for evening visits because watching the children during study hours typically does little to displace the relative parental burdens. Accordingly, the number of visits a noncustodial parent receives parenting time credit for cannot exceed the number of visits in which the children physically stay overnight with the parent.

On the other hand, if after calculating the noncustodial parent's child support obligation the court concludes that in a particular case application of the guideline amount would be unreasonable, unjust, or inappropriate, the court may deviate from that amount by entering a written finding articulating the factual circumstances supporting that conclusion. Ind. Child Support Rule 3. Noncustodial parents may be entitled to a deviation for non-overnight visits if the facts and circumstances of the case warrant it. Such facts might include, for example, the need to leave work early every day in order to pick the children up from school.

*Young*, 891 N.E.2d at 1048.

[17] In setting Father's child support obligation, the trial court awarded Father credit for 103 overnight visits. Mother challenges the 103-night credit, claiming that pursuant to the Indiana Supreme Court's opinion in *Young*, Father should not have been granted credit for any overnight visits. In support, Mother points to the parties' agreed order in which they agreed that "the Parenting Time Guidelines, including overnights for Father, [were] not currently appropriate due to the current situation with the [Child]." Appellant's App. p. 55. Accordingly, Mother argues that because Father is not currently exercising any overnight visits with the Child, the trial court erred in granting him credit for such visits.

[18] However, Mother fails to recognize the second part of the Indiana Supreme Court's opinion in *Young* which provides that, under the circumstances of a particular case, a noncustodial parent may be entitled to a deviation of his or her child support obligation for non-overnight visits. *Young*, 891 N.E.2d at 1048. Upon review, we conclude that the trial court could reasonably determine that, under the facts presented in the instant matter, it was appropriate to determine that Father was entitled to such a deviation when determining Father's child support obligation. The record suggests that Father has repeatedly sought and attempted to exercise overnight visitation with the Child. These efforts have been consistently opposed by Mother. Further, although the parties agree that overnight visits are currently inappropriate due to the Child's mental condition, numerous therapists, including Dr. Rebesco, have opined that Father should have visitation with the Child and that the

parties should work toward potential future overnight visits between Father and the Child.

[19] The Indiana Supreme Court has further acknowledged that "[f]lexible standards allow trial courts to 'fashion child support orders that are tailored to the circumstances of the particular case.'" *Bogner*, --- N.E.3d ----, 2015 WL 1944252 at *10 (quoting *Johnson v. Johnson*, 999 N.E.2d 56, 60 (Ind. 2013)). As such, in light of this acknowledgment; the Supreme Court's statement that the Child Support Guidelines are not immutable, black letter law, but rather provide room for flexibility; and its holding that under certain circumstances, a noncustodial parent may be entitled to a deviation of his or her child support, we conclude that the trial court did not commit clear error in finding that the circumstances of the instant matter justified a deviation from the norm.

## 2. Imputation of Income to Mother

[20] Trial courts may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed. *Matter of Paternity of Buehler*, 576 N.E.2d 1354, 1355-56 (Ind. Ct. App. 1991). The Child Support Guidelines permit imputation to discourage parents—both the payor-non-custodial parent and the recipient-custodial parent—from avoiding significant child support obligations by becoming unemployed or taking a lower paying job. *See id*. But the Guidelines do not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential. *Id*. "It is not our function ... to approve or disapprove of the lifestyle of [parents] or their career choices and the means by which they choose to discharge their obligations in general." *Id*. "To determine whether potential income should be imputed, the trial court should review the obligor's work history, occupational qualifications, prevailing job

opportunities, and earning levels in the community." *Homsher v. Homsher*, 678 N.E.2d 1159, 1164 (Ind. Ct. App. 1997).

*Sandlin*, 972 N.E.2d at 375.

[21] During the evidentiary hearing, Mother's counsel acknowledged that Mother and the Child live with Mother's parents. Mother's counsel also acknowledged that the trial court could impute income to Mother if it found that it was necessary for "some sort of deviation" from the Child Support Guidelines due to her complete lack of housing costs. Tr. p. 35. In addition, Father's counsel presented argument that because Mother only works thirty hours per week as a nurse at Community Hospital in Munster, Mother is not considered a full-time employee under the hospital's standards. Father's counsel also argued before the trial court that Father, who works in the business office at the hospital, was aware of job listings for full-time positions for nurses in the same department of the hospital in which Mother currently works. These job listings included both day and night shifts and would give Mother the opportunity to qualify as a full-time employee by working forty, as opposed to thirty, hours per week.

[22] Again, due to the fact that the parties agreed to proceed during the evidentiary hearing in summary fashion, the trial court could base its findings and conclusions on counsel's arguments. *See Bogner*, --- N.E.3d at ----, 2015 WL 1944252 at *5. In addition, it is reasonable to infer that the trial court denied Father's request for a 31% adjustment in relation to Mother's living arrangement because it applied such an adjustment by imputing income to Mother. It is also reasonable to infer that Mother's income would increase if

she were to apply for and accept one of the available full-time, night-shift positions at the hospital. Accordingly, we cannot say that the trial court committed clear error in imputing income to Mother.

[23] In light of our determination that the trial court did not commit clear error in either awarding Father credit for overnight visits or imputing income to Mother, we conclude that the trial court did not err in determining Father's child support obligation.

## II. Payment of the GAL's Fees

[24] Mother also contends that the trial court erred in ordering her to pay all of the GAL's fees. Specifically, Mother argues that Father should have been ordered to pay a portion of the fees because he makes more money than Mother, and also because he, like Mother, was responsible for generating some of the fees because he communicated with the GAL on numerous occasions.

[25] It is important to note that Mother, not Father, requested that a GAL be appointed. Mother's request appears to have come after numerous therapists and/or service provides recommended that Father be given the opportunity to exercise parenting time with the Child. The record demonstrates that prior to the appointment of the GAL, at least nine different mental health providers met with the family. Mother shared her belief with each of these providers that "something … undetermined" must have happened between Father and the Child at Father's home that would make the Child resistant to spending time with Father. Tr. p. 14. Upon evaluation, each of the nine mental health

providers found no basis for Mother's belief. In this vein, Father's counsel argued that

> And, every time it got to that point when the therapist said [Father] didn't do anything; he's no harm to, to [the Child]. He should have parenting time. Let's start phasing it back in, [Mother] would balk. Oh, no. Oh, no; I'm not ready. No, no this isn't going to work. This is not right. Switch to another provider.

> So, our position February 25 was in light of that history this was, getting another [GAL], it's just another bite at the apple for [Mother]. Why should [Father] advance money to do the same thing over again, at his expense that had gone on before with all the other nine pre, previous providers.

Tr. p. 14.[1]

[26] Upon appointing the GAL, the trial court ordered Mother to pay all of the GAL's fees. The trial court, however, left open the possibility that some of the fees may be reallocated to Father in the future. In subsequently considering whether to reallocate some of the GAL's fees to Father, the trial court heard Father's counsel's above argument relating to the history of the parties' case. The trial court also heard Father's counsel's argument that

> Dr. Rebesco had recommended in July that they start phasing [F]ather in with one-on-one time alone. Mother was … unable to agree with that. It didn't happen. The [C]hild was non, not supportive of it. There's we believe the evidence had indicated that the [C]hild is an extension of [Mother] and, and is saying, and is parodying what

---

[1] Again, in light of the summary nature of the proceedings, the trial court could properly consider the arguments of Father's counsel in reaching its determination. *See Bogner*, --- N.E.3d at ----, 2015 WL 1944252 at *5.

[Mother] says; if [Mother] doesn't want it to happen, the [C]hild then is resistant. That's our prospective on, on all the data that we've gotten. And that's why we think it's, if, if [Mother] doesn't support it, she certainly doesn't encourage and foster a relationship and time alone with [Father], then the [C]hild therefore, mimics and acts out [Mother's] desires. That's how we perceive it and that's what we think happens here. And, this happened with all eight, with all eleven providers. And, so, but he, he is agreed whatever Dr. Rebesco recommends as a mental health consultant to and whatever the parenting time coordinator recommends as a phase-in and how to handle it, he'll do it. He just wants to get access to the [C]hild.

Tr. pp. 41-42.

[27] Upon review of the record, we are led to believe that although Mother claims that she has always agreed that Father should be allowed to exercise parenting time with the Child, just not overnight parenting time, one can reasonably infer from the record that Mother may not have been as willing as she claimed to enable Father to exercise parenting time with the Child. In fact, the trial court heard argument that the alleged need for the GAL was due to the fact that Mother disagreed with the determination of the numerous other service providers that Father should have parenting time with the Child. As such, we conclude that despite the fact that Father makes more money than Mother, the trial court did not commit clear error in ordering Mother to pay all of the GAL's fees.

## III. Father's Attorney's Fees

[28] Mother last contends that the trial court erred in ordering Mother to "pay one-half of the $20,440.00 balance due on Father's attorney['s] fees, in the amount

of $10,220.00." Appellant's App. p. 17. Specifically, Mother claims that the trial court abused its discretion in ordering her to pay a portion of Father's attorney's fees because she substantially prevailed before the trial court and, accordingly, the action could not be found to be frivolous or vexatious. We review a trial court's decision to award attorney fees and the amount thereof for an abuse of discretion. *In re B.J.N.*, 19 N.E.3d 765, 771 (Ind. Ct. App. 2014) (citing *St. Mary Med. Ctr. v. Baker*, 611 N.E.2d 135, 137 (Ind. Ct. App. 1993)).

[29] Indiana Code section 31-17-4-3 governs awards of attorney fees in the context of actions involving parenting time. It reads:

> (a) In any action filed to enforce or modify an order granting or denying parenting time rights, a court may award:
>> (1) reasonable attorney's fees;
>> (2) court costs; and
>> (3) other reasonable expenses of litigation.
> (b) In determining whether to award reasonable attorney's fees, court costs, and other reasonable expenses of litigation, the court *may* consider among other factors:
>> (1) whether the petitioner substantially prevailed and whether the court found that the respondent knowingly or intentionally violated an order granting or denying rights; and
>> (2) whether the respondent substantially prevailed and the court found that the action was frivolous or vexatious.

Ind. Code Ann. § 31-17-4-3 (emphasis added). Additionally, we have also held that "in the context of a parenting time action, that '[w]hen making an award of attorney's fees, the trial court *must* consider the resources of the parties, their

economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award.'" *In re B.J.N.*, 19 N.E.3d at 771 (quoting *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 127 (Ind. Ct. App. 2004)) (emphasis added in *B.J.N.*).

[30]     The record indicates that Father earns approximately $74,000.00 per year and Mother earns approximately $40,575.00 per year. There record further indicates, however, that Mother does not work full-time even though there seem to be full-time positions available at the same hospital, in the same department, working the same shift as Mother currently works. Mother and the Child currently live with Mother's parents and, as a result, Mother does not have any significant monthly housing expenses. For Mother's part, Mother's counsel acknowledged that Mother does not have any significant monthly housing expenses but argued that like Mother, Father also lives with his parents and, as a result likewise does not have any significant monthly housing expenses. Mother's counsel also argued that Mother's economic position is such that Mother does not have an excess of funds available after paying all necessary bills and expenses. The trial court also heard argument indicating that Mother is the driving force behind the continuing nature of the litigation. Specifically, Father's counsel reiterated his above-stated arguments relating to the history of the proceedings between the parties and added the following:

> And, the mental health providers, mental health providers have all said, let's go. And, [Mother] keeps saying oh, no, no, no, no, no, no. How much more does this man have to put up with? I don't see where

> he should have to bear this burden along with the emotional burden of not being able to spend time with his [C]hild.

Tr. p. 30.

[31] The trial court received evidence and heard argument relating to both of the parties' financial resources, economic conditions, and their ability to engage in gainful full-time employment. The trial court also heard argument suggesting that Mother was essentially the driving force behind the ongoing nature of the proceedings and that Father sought help from the trial court only after Mother made it difficult, if not impossible, for him to engage in parenting time with the Child. Again, although Mother claims that she has always agreed that Father should be allowed to exercise parenting time with the parties' Child, the record suggests otherwise. In fact, Mother's seeming disagreement with the conclusions of the numerous service providers and her reluctance to allow Father to exercise parenting time with the Child appears to have directly resulting in Father amassing such a large outstanding balance of attorney's fees. Upon considering all of the specific circumstances relating to the instant matter, in their totality, we cannot say that the trial court abused its discretion in ordering Mother to pay half of the outstanding balance of Father's attorney's fees.

## Conclusion

[32] In sum, we conclude that the trial court did not err in determining Father's child support obligation or in ordering Mother to pay all of the GAL's fees. We

further conclude that the trial court did not abuse its discretion in ordering Mother to pay half of the outstanding balance of Father's attorney's fees. Accordingly, we affirm the judgment of the trial court.

[33] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.