Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 04 2014, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CHRISTOPHER M. FORREST, ESQ.**
Forrest Legal LLC
Fort Wayne, Indiana

**DANIEL M. GRALY, ESQ.**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL H. MICHMERHUIZEN**
Barrett & McNagny LLP
Fort Wayne, Indiana

**CORNELIUS B. HAYES**
Hayes & Hayes
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF: | ) | |
| CARRIE A. CHAPMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1307-DR-343 |
| | ) | |
| STEPHEN L. CHAPMAN, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Robert J. Schmoll, Special Judge
Cause No. 02D07-0907-DR-714

**April 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Carrie Chapman (Mother) appeals the trial court's award of child support in the dissolution of her marriage to Stephen Chapman (Father).

We affirm.

**Issue**

Mother raises two issues on appeal, one of which we find dispositive and restate as whether the trial court abused its discretion when it failed to impute income to Father from a trust and its successor limited liability company.[1]

**Facts and Procedural History**

In December 1997, Father's parents created a trust, which provided that Father, the sole beneficiary, would receive a distribution of the trust's assets on his fifty-fifth birthday on November 13, 2010. The trust's assets initially consisted of stock in Waterfield Mortgage, a company that Father's grandfather founded in the 1920's or 1930's. Father's mother inherited the stock from her parents. The mortgage company was eventually sold, and the stock was replaced with cash and other assets.

At the time the trust was created, Mother and Father were engaged. They married a month later in January 1998. During the course of the marriage, Father was employed as an attorney at a local law firm, and Mother took care of the parties' home and children, three boys born in 2000, 2002, and 2005. In 2006, apparently following the sale of the stock in the

---

[1] Mother also argues that the trial court's failure to properly calculate Father's weekly gross income requires reapportionment of attorney fees. Because we affirm the trial court's calculation of Father's weekly gross income, we need not apportion attorney fees.

trust, Father transferred $3,000,000 to Mother for estate planning purposes. At some point, Father's parents established separate trusts for each of the parties' sons. In 2009, these trusts had values of $584,000, $616,000, and $479,000.

Mother filed a petition for dissolution of marriage in June 2009. In May 2010, the trustees filed a verified petition to reform the trust and modify the date of distribution of the trust assets to Father. At a hearing on the petition, Father's father testified that the purpose of the trust was to pass the property inherited by Father's mother to Father. In November 2010, the trial court granted the trustee's petition to reform the trust based on language in the trust and ordered that Father's interest in the trust would not vest prior to six months after the final dissolution decree and completion of any appeal. Mother appealed, and this Court reversed the trial court's decision. See Chapman v. Chapman, 953 N.E.2d 573 (Ind. Ct. App. 2011), trans. denied. Specifically, this court held that language in the trust did not support the reformation. Id. at 583.

After the Indiana Supreme Court denied transfer in Chapman, Father's father, individually and as trustee of the trust, created a limited liability corporation known as Pathfinder Investments, LLC. In March 2012, Pathfinder managers amended the agreement and exchanged $19.5 million in trust assets for membership units in the limited liability corporation. Father had no prior knowledge of the exchange. Although Father owns approximately 95% of Pathfinder, he has no control over the management of the company. He is prohibited from withdrawing or reducing the capital contributions without the express consent of all other members, he forfeited all ownership in the assets transferred to

Pathfinder, he has no right to request or demand payment of income earned by the company, and he is not allowed to resign or liquidate his ownership interest or transfer ownership units without the consent of the other members who can object to the liquidation for any reason. The stated purpose for the creation of Pathfinder was an estate planning device.

A few months later, in May 2012, the trial court approved the parties' Partial Mediated Settlement Agreement, which resolved all issues relating to the division of marital assets and liabilities. Specifically, pursuant to the terms of this agreement, Mother was awarded in part the mortgage-free family home in Fort Wayne valued at $500,000, all household goods in her possession at the home, a 2009 Lexus, and all cash in her possession, including at least seven different accounts. Father was awarded in part the family's condominium in Boca Raton, Florida, the Fort Wayne home he purchased after the parties separated, all possessions in those two homes, a 2005 Volvo, all General Electric stock, and "[a]ll assets, including growth thereon or proceeds thereof in whatever current form of the Stephen L. Chapman Irrevocable Trust established in 1997." Appellant's App. p. 100. The agreement further provided that Father would pay Mother a lump sum of $4,300,000 as a property equalization payment.

In December 2012, the parties submitted a Second Partial Mediated Settlement Agreement, which resolved all issues relating to child custody and parenting time. Specifically, pursuant to the terms of the agreement, the parties share joint legal custody of the three boys. Mother has primary physical custody, and Father has parenting time consistent with the terms of the Indiana Parenting Time Guidelines, subject temporarily to

4

specific Settlement Agreement provisions.

In January 2013, the trial court held a three-day hearing to determine the sole remaining issue regarding child support. The parties agreed that Mother's weekly gross income for child support purposes is $3609, which is based on Mother's income from her $7,000,000 investment portfolio. Father argued that his weekly gross income for child support purposes is $7,638, which is based on his income from his $11,000,000 investment portfolio. According to Father, based on these two incomes, his weekly child support obligation would be $893.56.

Mother, however, asked the trial court to impute income to Father from the trust and its successor Pathfinder, LLC. According to Mother, imputing this income would increase Father's weekly gross income to $18,956. With this imputed income, Father's weekly child support obligation would be $2,221.67 per week.

Although the parties never used the trust income during the course of the marriage, both parties testified at the hearing that their children had a high standard of living during the marriage. Specifically, the children attended a private school, went on several vacations every year, had large birthday parties, and participated in country club activities such as swimming, golf, and tennis. According to Mother, the $861 she was receiving as child support at the time of the hearing was not sufficient for her sons to maintain the standard of living they enjoyed during the marriage. Father, however, testified that the children's standard of living is actually higher now than it would have been had the marriage remained intact. According to Father, although Mother was awarded a mortgage-free $500,000 home

5

in the property settlement, she recently purchased a $711,000 home, which is larger than the family home. She also added wood floors and a bedroom to the new home for an additional $44,000. As a result, the children now live in a nicer house than they did during the marriage. In addition, Father continues to pay the $42,000 tuition for their private school as well as the county club fees.

Following the hearing, the trial court issued an order denying Mother's request to impute income from the trust and its successor Pathfinder, LLC, to Father's weekly gross income. Mother appeals.

## Discussion and Decision

Mother argues that the trial court erred in calculating Father's weekly gross income. Specifically, she contends that the trial court should have imputed income to Father from the trust and its successor limited liability company.

Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. Sandlin v. Sandlin, 972 N.E.2d 371, 374 (Ind. Ct. App. 2012). The guideline approach is promulgated in Indiana Code section 31-16-6-1, which considers, among other things, the standard of living the child would have enjoyed if the marriage had not been dissolved and the financial resources and needs of the noncustodial parent. Nikolayev v. Nikolayev, 985 N.E.2d 29, 33 (Ind. Ct. App. 2013). The trial court is vested with broad discretion in making child support determinations. Sandlin, 972 N.E.2d at 374. A trial court's calculation of child support under the Guidelines is presumptively valid. Morgal-Henrich v. Henrich, 970 N.E.2d 207, 212 (Ind. Ct. App. 2012).

6

A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. Id. A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. Id. We do not reweigh the evidence or judge the credibility of the witnesses upon review. Sandlin, 972 N.E.2d at 375. Rather, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. Id.

The Indiana Child Support Guidelines define "weekly gross income" in part as follows:

> [A]ctual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits.

This court has previously explained that the phrase "actual income" as used in the Guidelines necessarily implies that the income be not only existing in fact but also currently received by the parent and available for his immediate use. Carmichael v. Siegel, 754 N.E.2d 619, 628 (Ind. Ct. App. 2001).

In Carmichael, which is instructive to the case before us, the parents were divorced in 1992. Father assigned $286,000 in various IRAs to Mother. The trial court granted custody of the parties' two children to Father. When Father's income declined and the parties' son's expenses increased, Father filed a petition to modify Mother's support obligation. Following a hearing, the trial court imputed $20,400 to Mother's weekly gross income based on the earnings of her IRAs and ordered her to pay $10,000 of her son's yearly tuition as well as

7

$109 per week in child support.  Id. at 624-25.

On appeal, we concluded that where the annual returns of a parent's IRAs are automatically reinvested and there is no indication that previous withdrawals from the IRAs were made to fund the parent's living or lifestyle expenses, those returns generally should not be considered "actual income" when calculating the parent's child support obligation.  Id. at 629.  Such returns are not currently received by the parent nor immediately available for his or her use.  Id.  We therefore concluded that Mother's IRA earnings were not weekly gross income as the phrase is used in the Child Support Guidelines.  Id.

However, we also recognized that income that is not "actual" may be imputed to a parent under certain circumstances.  Id.  For example, a trial court may impute income to a parent that is voluntarily unemployed considering the parent's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.  Id. at 625, 629.  In-kind benefits that a parent receives that reduce his or her living expenses may also be imputed as income.  Id.  Further, the public policy behind the payment of child support may require the imputing of income in any situation where a parent is intentionally committing misconduct by deliberately hiding his or her income in order to avoid making support payments.  Id. at 630.  Lastly, regular and continuing payments made by a subsequent spouse that reduce the parent's costs may also be the basis for imputing income.  Id.  Our review of the purposes underlying the imputing of income revealed that none was implicated.  Id. at 629.  We therefore concluded that the trial court erred in imputing income from the earnings of Mother's IRAs.  Id,

Here, as in Carmichael, growth in Pathfinder is automatically reinvested because Father has no right to request or demand payment of income earned by the company, and he has never taken withdrawals from the trust to fund his living or lifestyle expenses. Because Father does not currently receive these returns, and they are not immediately available for his use, earnings from the company are not weekly gross income.

Further, none of the purposes underlying the imputing of income are implicated in this case. Specifically, Father is not voluntarily underemployed, no in-kind benefits supplement his income, Father is not deliberately hiding his income to avoid making support payments, and he has no subsequent spouse that reduces his costs. Here, as in Carmichael, the trial court did not err in failing to impute income from the trust and its successor company to Father's weekly gross income for child support purposes.

We further note that our review of the evidence reveals that the trust's assets initially consisted of stock in a mortgage company founded by Father's grandparents eighty to ninety years ago. The purpose of the trust was to pass this property to Father. The trust and all assets including growth thereon were awarded to Father in a mediated settlement, and the parties never used the trust income during the course of the marriage. Father's support obligation will be approximately $900 per week in addition to the $42,000 he pays for his children's education and country club dues. The parties' children's standard of living has not suffered.

Our standard of review is flexible enough to permit the trial court to fashion a child support order that is tailored to the circumstances of the particular case before it and

9

consequently reflects its best judgment. <u>Johnson v. Johnson</u>, 999 N.E.2d 56, 60 (Ind. 2013). Here, the trial court fashioned a solution that it believed was equitable to both parties, and its decision is not clearly against the logic and effect of the facts and circumstances before the court.

## Conclusion

The trial court did not abuse its discretion when it failed to impute income to Father from the trust and its successor limited liability company.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.