## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2017, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEY FOR APPELLEE

Elizabeth A. Bellin
Elkhart, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Christopher A. Toth,

*Appellant-Respondent*,

v.

Julia L. Noblitt,

*Appellee-Petitioner*.

June 14, 2017

Court of Appeals Case No.
20A03-1609-DR-2240

Appeal from the Elkhart Superior Court

The Honorable David C. Bonfiglio, Judge

Trial Court Cause No.
20D06-0508-DR-629

**Brown, Judge.**

[1] Christopher A. Toth ("Father") appeals the trial court's order requiring him to pay certain medical expenses and educational expenses of his children as well as the attorney fees of his former wife Julia L. Noblitt ("Mother"). He raises two issues which we revise and restate as:

I.      Whether the trial court erred in ordering Father to pay certain medical expenses and educational expenses; and

II.     Whether the trial court abused its discretion in awarding attorney fees to Mother.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Father and Mother were married and had two children, K.T., born on November 13, 1993, and A.T., born on June 25, 1995. On November 9, 1998, the court entered a dissolution decree dissolving the marriage of Father and Mother. The court granted joint custody of the parties' children with Mother being the primary physical custodian, and ordered Father to pay $119 per week in weekly child support, $45 per week for health insurance, and a weekly babysitting expense of $110. It ordered that Mother pay medical, hospital, optical, dental, and prescription expenses in an amount equal to six percent of the base support as set forth in the Child Support Guidelines. All other uninsured medical expenses would be divided by the parties with Father paying 52% and Mother paying 48%.

[3] On May 1, 2003, the court entered an order finding that the relationship of the parties had deteriorated to the point where joint legal custody should be

terminated. It denied Father's request for equally shared custody and granted Mother primary custody. The court also ordered that Father pay directly to Mother 48% of the children's school expenses or $29 each week. On May 24, 2004, it entered an order finding that Father "made no excuses for non-payment of the school expenses nor the payment of the arrears and the court finds that he has violated the orders of court and is in contempt." Appellant's Confidential Appendix Volume 2 at 56. On May 8, 2008, it entered an order noting that the parties stipulated that Father owed Mother $7,300 for all school related claims and issues.

[4] On August 22, 2008, the court entered an order finding that K.T. was boating at Father's residence on Lake of the Woods in June 2006 when she was struck by lightning and could not walk by herself, talk coherently, prepare her own meals, dress herself, use the bathroom by herself, or be left alone. The court found that Mother's loving care of her highly disabled child could not be duplicated by a paid in-home care provider. It noted that Father provided insurance for the children and that both children received Medicaid benefits as a result of K.T.'s injuries. Father was ordered to pay child support in the amount of $274 per week with an arrearage of $4,131 as of July 1, 2008. On December 5, 2008, the court entered an order addressing a motion to correct error and other issues and ordered that Father pay $246 per week in child support.

[5] On March 9, 2009, the court addressed a Motion to Clarify filed by Mother and ordered that Father pay $261 per week effective January 31, 2008. The court's order also stated that Father was making $100 per month payments with respect

to an educational arrears of $7,300 and that the amount was reasonable based on Father's economic situation.

[6]     On October 1, 2013, Mother filed a motion to determine arrears with respect to medical expenses, educational expenses, and child support and on November 12, 2015, she filed a supplement to her motion to determine arrears.

[7]     On March 23, 2016, Father filed a verified motion to modify support asserting that "due to the fact that [A.T.] has reached the age of majority, the child support order should be modified to reflect a support order for [K.T.] only." Appellant's Confidential Appendix Volume 4 at 16.

[8]     On March 24, 2016, the court held a hearing at the beginning of which Mother's counsel objected to Father's motion to modify child support and said: "That issue would raise additional issues and we'll be filing them for a college expense for one of the children. So, I, I'm not ready to proceed. So I object to that being heard today. It's not properly before the Court." March 24, 2016 Transcript at 3. After some discussion, the court stated:

> So I think what we're saying, I think what's being said is, we're not going to actually; we're not going try [sic] that today. I'm not going to make a decision on that. Um, and we're going to try what is before the Court and then if that doesn't get resolved by the parties, then parties will tell the Court and we can do another Evidentiary Hearing and I think it probably wouldn't take a lot of time.

*Id.* at 5.

[9]     Mother testified that K.T. was still completely disabled, that she was K.T.'s full-time caretaker, that K.T. did not receive Social Security Disability or Supplemental Security Income benefits, and that she had applied for benefits and was denied. Mother testified that it had been her practice to send copies of bills to Father, but the practice became expensive and time consuming so she began preparing statements at the end of every year. She testified that Father never objected to the summaries made from the original bills and that Father did not reimburse her. She explained that Petitioner's Exhibit 2 contained the children's medical expenses in her handwriting made from the original bills. Father's counsel objected "to the nature of the expenses that are alleged to meet to be recouped" and did "not agree that that is an appropriate vehicle in which to ask for reimbursement." *Id.* at 10. The court admitted Petitioner's Exhibit 2 "[w]ith a qualifier." *Id.* Other similar exhibits related to medical expenses for other time periods were also admitted.

[10]    Mother testified that Petitioner's Exhibit 5 included unreimbursed medical expenses through 2015. Father's counsel stated: "Judge, I do object to this exhibit as it is requesting a $17,586.29 award, apparently, according to his request for specific quantities on the arrearage. We believe that is completely inaccurate as a recitation of what is owed." *Id.* at 13. After some discussion, the court stated: "I guess I would admit it . . . as the . . . [Mother's] statement of what she believes she's owed." *Id.* Mother's counsel then stated: "Yeah. It's

admissible under Evidence Rule 106, summary, under, under, where there's an interesting case called Shively v. Shively, 680 N.E.2d 872."[1] *Id.*

[11]  Mother testified that doctors recommended vitamins and that the vitamins were over-the-counter. When asked if they were necessary for K.T.'s treatment, Mother answered: "Yes. That's why they asked me to get them." *Id.* at 14. Mother testified that Dr. Skinner wrote a prescription for massages, but insurance would not cover it. When asked about Ensure and Boost on her summary of medical expenses, Mother testified that those were K.T.'s nutrients, that K.T. had a gastro-tube for a period of time and "when she was able to do some eating we had to supplement because she is a slow eater due to dysphasia and other medical issues, so the boost was to help supplement proteins and vitamins." *Id.* at 15. She testified that K.T. was on protein shakes, that those are necessary to help her gain weight, and that the doctors want her BMI increased two points.

[12]  Mother testified she kept a similar record of educational expenses, that Father did not object to the handwritten summaries, and that he had not reimbursed her for certain educational expenses. Her counsel moved for the admission of exhibits related to educational expenses, Father's counsel did not agree to the reimbursement of those expenses, and the court admitted the exhibits with

---

[1] Ind. Evidence Rule 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." It appears that counsel intended to cite Ind. Evidence Rule 1006, which is titled "Summaries to Prove Content."

qualifiers.  Mother also testified that she was requesting that Father pay her attorney fees.

[13]  On cross-examination, Mother responded that she did not have prescriptions for vitamins or Boost, but that they were recommended by a doctor.  She testified that she was not asking for reimbursement for vitamins for A.T., that she did not send Father a summary of medical bills in 2015, and that she would have to look at her notes for 2014 and 2013.  Mother stated that she was not able to take A.T. to school because she was taking care of K.T.

[14]  Mother testified that A.T. was twenty years old and in her second year at Indiana University South Bend ("IUSB").  When asked by Father's counsel if some of the educational expenses she had requested were for college for A.T., Mother answered affirmatively and indicated that the 2015 expenses for A.T. were related to college.  On redirect examination, Mother testified that A.T. needed a car "to get back and forth to all of her soccer and school and activites." *Id.* at 47.

[15]  Father testified that his current child support order was $261 per week, that he did not receive bills but only the handwritten summary from 2006 to 2012, and that Petitioner's Exhibit 2 was the last notification he received.  He voiced his objection to food products such as Boost and that he was not involved in the decision regarding the car or a second car that was purchased.  He disagreed that he should be paying for a hotel, food, and mileage on trips for K.T. to

receive medical services or that he should pay for school lunches while he was paying child support. He requested the actual bills.

[16] On cross-examination, Father responded that he did not contact Mother for medical bills in 2015, 2014, or 2013. Father testified that he worked at Pitney Bowes since 2004 and that he contributed nothing to the second car for A.T. On redirect examination, he stated that he had not even received compilations from 2013 to the present until litigation.

[17] On April 4, 2016, Mother filed a petition for education expenses indicating that A.T. was a student at IUSB, that A.T. lived with Mother, and that A.T. required Father's financial assistance to complete her college education. On April 22, 2016, Mother's attorney filed an Affidavit of Time indicating that he recorded 65.68 hours of time from September 20, 2013, to the completion of proposed special findings.

[18] On May 6, 2016, the court entered an order stating:

> 1. The parties have two children: [K.T.], born November 13, 1993, and [A.T.], born June 25, 1995. Dissolution was granted on November 9, 1998. There have been numerous proceedings over the years, but the Court Orders on August 22, 2008 and December 5, 2008 are attached and incorporated because of their significance. They are significant here because the issues before the court on this occasion: medical, educational and support arrears may have different facts then prior evidentiary trials, but [Father's] approach remains the same; that is, undervaluing the care mother continues to give to their disabled child, not wanting to pay his fair share of the costs of her overall condition and

attempting to minimize his financial exposure for their second born child.

2. Three times Mother has applied for Social Security Benefits on behalf of [K.T.], and all applications have been denied: Either [K.T.] had too much "income" to qualify, or she had not worked long enough to qualify for benefits. [Mother's Exhibit 1].[2]

3. [A.T.] is now twenty years old, a student at Indiana University South Bend, and resides with her Mother.

4. On March 9, 2009, Father was ordered to pay child support of $261.00 per week, for both children. An *en gross*, or undivided order, cannot be apportioned between the parties [sic] two children, nor reduced *pro rata*. Indiana Child Support Guideline 4 Commentary. *Whited v. Whited* 859 N.E.d 657, 661. IND (2007)[.]

5. Mother was compelled to give up all employment outside of the home to care for [K.T.], and she remains [K.T.'s] full time care giver to this day. As previously found: "This Court determines that the Mother's loving care of a highly disabled child cannot be duplicated by a paid, in-home care provider." [Finding #18 Special Findings of August 22, 2008.] Because Mother provides full time care for [K.T.], other employment is precluded and no income is imputed to her. [See: Conclusions of Law C & E of August 22, 2008].

---

[2] Some bracketed text appears in the trial court's order.

Moreover, the 2010 amendments to the Child Support Guidelines specifically cites as an example: *(3) a parent caring for a disabled child;* [Commentary to Guideline 2]

6. Father resides in Clearwater, on Florida's Gulf Coast. His residence is on the beach. He is a long term employee of Pitney-Bowes where he is currently paid in excess of $104,000.00 per year. [Exhibit A shows Father earned $20,141.43 from January 1, 2016 through March 4, 2016, a period having ten Fridays (although only 9 weeks). This rounds to $2,014 per week, or $104,728 per year.]

7. Although the parties originally shared joint custody of the children, joint custody was terminated after a trial on April 28, 2003 because of the parent's [sic] inability to communicate and cooperate with one another and "The wife is granted the care, custody and control of the minor children." Order of May 1, 2013, ¶ 7.[3]

8. A custodial parent has the sole authority to determine the child's upbringing, including the child's education, health care, and religious training. I.C. § 31-17-2-17(a). No evidence was presented of any of the limiting conditions specified in §17(b).

9. Father's approval of Mother's choices for the children's educational opportunities and medical treatments is not required. Moreover, Mother has had Guardianship over [K.T.] since November 23, 2011, shortly after her eighteen (18) birthday and

---

[3] It appears that the court intended to refer to the May 1, 2003 order.

she has complete authority over [K.T.]'s medical and educational needs. See: 20D06-1111-GU-6.[4]

10. The Court order of May 1, 2003 granted Mother sole custody and also ordered education expenses. Father was ordered to pay a percentage of the educational expenses directly to Mother. The order made no provision for Mother to notify Father of the educational or medical expenses.

11. Mother testified that all medical bills were first submitted to the insurance carrier for payment, and the bills not paid by insurance were then submitted to Medicaid. Mother paid the bills that were not paid by either the insurance carrier or Medicaid.

12. Mother further testified that every year she either copied the original receipts, or made summaries from the original receipts, as her regular practice in the preparation of her tax returns. She further testified that she either handed these expense sheets to Father, or mailed them to Father. For 2015, no separate copies of bills nor summaries were given Father, only the summaries filed in this case and served on his counsel of record. Mother has given Father adequate notice of medical and educational expenses.

13. Mother provided Father with sufficient information to put him on notice of unreimbursed expenses so that he could request further information or he could communicate directly with the service provider. Mother was not required to provide this information by Guideline, Rule or Order. Mother provided this

---

[4] Cause number 20D06-1111-GU-6 refers to a guardianship proceeding.

information annually to facilitate reimbursement of the bills she had paid.

14. [K.T.] has had numerous medical treatments over the past ten years: Bremen Community Hospital, Elkhart General Hospital, Memorial Hospital, Bronson Hospital, Haller Rowe Haviland Ophthalmology Clinic, Kalamazoo Radiology, Elkhart Clinic, and the Mayo Clinic. [Mother's Exhibit 2].

15. In addition to direct medical care, Mother testified that the physicians ordered vitamins, food supplements (Boost, Ensure, *etc.*), massage therapy, horseback riding therapy, and a recumbent bicycle. For example, Mother testified that Boost was first ordered in 2007 because [K.T.]'s stomach couldn't process food after the "G-tube" was removed, and the doctors have ordered similar supplements ever since.

16. [K.T.] has been treated at the Mayo Clinic in Rochester, Minnesota, at least since 2011 [Mother's Exhibit 2]. In 2014, in an effort to control [K.T.'s] tremors, Mayo's [sic] inserted electrodes deep into her brain. The batteries did not last as long as expected and Mother had to take [K.T.] back to the Mayo Clinic in February 2015 to change the batteries. Unfortunately, one of the batteries may have been contaminated and caused an infection in [K.T.'s] brain. Mother had to take [K.T.] back to Mayo's for emergency surgery to remove the deep brain implants and cure the infection. The emergency surgery was in March 2015. The following month, Mother had to take [K.T.] back to the Mayo Clinic for a post-surgical follow-up examination. [Mother's Exhibit 3].

17. Mother lists $3,381.44 as unreimbursed medical expenses for these four trips to the Mayo Clinic to implant and later remove the deep brain stimulation electrodes. Her expenses include mileage, food, and hotel bills. [Mother's Exhibit 3].

18. The $3,381.44 are expenses Mother had to pay to obtain necessary and emergency medical treatment for her daughter. These expenses are reimbursable by Father to Mother.

19. After witnessing her sister being struck by lightening [sic], [A.T.] had years of therapy with Lou Ann Todd. [A.T.] also had a therapeutic massage in 2011 and another in 2013, totaling $65.00 [Mother's Exhibits 2 & 3]. Mother testified that [A.T.'s] massages were also ordered by a physician.

20. All medical treatments, prescriptions, and health care supplies and aids purchased by order of any of either daughters' healthcare providers are valid medical expenses. Father owes Mother those expenses that exceed the "6% Rule", have not been paid by insurance nor Medicaid, and have been paid by Mother.

21. Mother has paid $17,526.89 of medical expenses for 2006-2015, that have not been covered by insurance, nor Medicaid, and exceed the 6% Rule. Mother has provided Father with summaries of the expenses, but Father has not paid her for these expenses. [Mother's Exhibits 2, 3, 4 & 5].

22. Father is responsible for 100% of un-reimbursed medical expenses above 6% of support because Mother is [K.T.'s] full time care taker and cannot work outside of the home.

23. Father owes Mother $17,526.89 for un-reimbursed medical expenses for 2006-2015.

24. In most situations involving school expenses, both parents have incomes and are sending their children to public school. Many public school expenses are considered "controlled" expenses that are part of the child support order. This case is not the usual case: The children are in a private/parochial school.

Mother is prevented from employment because she is the full time care giver for their severely disabled daughter and the Father is a high income wage earner.

25. [A.T.] has played soccer since 2008. [Mother's Exhibit 6]. Mother testified that she asked Father about soccer before enrolling [A.T.], just as she asked him about many other activities to which Father now objects, and he did not object then. Mother has no income. Father makes over $104,000.00 a year [Father's Exhibit A]. Father does not oppose [A.T.'s] playing soccer; Father opposes having to pay for [A.T.'s] playing soccer. Given these factors, and the Support Guideline 8, Father should reimburse Mother for soccer expenses.

26. Mother claims $1,932.26 for repairs to [A.T.'s] car, after crediting Father with the $375 of repairs he has already paid. [Mother's Exhibit 7.] In *Schacht v. Schacht*[, 892 N.E.2d 1271, 1277 (Ind. Ct. App. 2008)], the mother testified that she had paid for their child's college expenses, including expenses of a car, car insurance, car maintenance, cell phone, musical instrument reeds, clothing, gasoline, and food. The father objected to paying for any of these expenses. The trial court found that these were valid "other educational expenses" and ordered the father to pay. The Court of Appeals affirmed stating that "Each of these expenses reasonably fit within the Child Support Guidelines' definition of [']other educational costs.[']"

27. [A.T.] lives with her Mother in Granger, IN, and attends Indiana University in nearby South Bend, IN. Mother cannot take [A.T.] to and from classes because Mother is always "on call" to take care of [K.T.] and take [K.T.] to her classes, medical appointments, and therapy sessions. Father offered no evidence of how he expected [A.T.] to go from home to her classes and home again, if she didn't have a car. Under these facts, a car is a valid educational expense. Father owes Mother the remaining $1,932.26 of car repairs.

28.  Additional Expenses related to Education: $35 "Spirit" shirt (which Mother testified was required on "Spirit Days"); $8 for school jewelry; $10.50 for a high school "City Champion" patch; $25 prom ticket; $208.75 prom dress; $24 Special Ed dance tickets and $250 senior pictures.

29.  I.C. § 31-16-6-1(a) states that reasonable factors for the court to consider in a child support order include, the physical and mental condition of the children; the children's educational needs; the financial resources of the custodial parent; the financial resources of the non-custodial parent; and the standard of living the children would have enjoyed if the marriage had not been dissolved.

30.  If this marriage had not been dissolved, then Mother would still be devoting herself to the care of their disabled daughter; [A.T.] would still be in college; and the Father would still be earning $104,000.00 a year and the families' financial resources would have paid for the $8 piece of school jewelry, a $10.50 "City Champion" patch, or pay $35 for school "Spirit" shirts.

31.  The Court does not allow the $895.00 for school lunches from 2006 – 2015 in that the same are ordinary elementary and secondary school expenses.

32.  Since May 8, 2008, Mother has paid $6,689.16 in educational expenses.  Mother has provided Father with summaries of the expenses, but Father has not paid her for these expenses.  [Mother's Exhibits 6, 7 & 8]

33. Father owes Mother [] $6,689.16 for educational expenses from May 8, 2008 through 2015.

34. At all pertinent times, Father has been financially able to comply with the orders of this Court, but he has not done so.

35. The orders of this Court are clear, the Father had the financial ability to pay, the Father refused to pay Mother the money he owed under the orders.

36. *I.C. § 31-15-10-1: (a) The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorneys fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.*

*(b) The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name.*

This proceeding; that is, the issues being resolved herein were required by [Father's] non-compliance. It is not like this is the first time court action was required to force [Father] to live up to his legal duties to his children and further based upon the disparity of income; that is, none for [Mother], $104,000 per year for [Father], [Father] should pay [Mother's] attorney fees which were only required because of his actions. The affidavit of attorney's fees shows that [Mother's] attorney has spent over 65 hours on this case in the past 2½ years. The Court finds that $250.00 per hour is a reasonable rate for an attorney with forty years experience which results in $16,250.00 in attorney fees.

CONCLUSION:

The Court notes that it entered a judgment against Father for unpaid child support in the sum of $5,851.00 as of December 31, 2008. [See: Order of June 8, 2009]. As a judgment, interest

accrues at 8% per annum. *Caldwell v. Black*, 727 N.E.2d 1097, 1100, Ind. App. (2000). Father has paid no part of the principal nor interest on that judgment. No other evidence was submitted as to child support arrears.

Judgment against Father in the amount of $17,526.89 for un-reimbursed medical expenses for 2006-2015 in favor of Mother subject to an annual rate of eight percent (8%) post-judgment interest.

Judgment against Father in the amount of [] $6,689.16 for educational expenses from May 8, 2008 through 2015 subject to an annual rate of eight percent (8%) post-judgment interest.

Judgment against father in the amount of $16,250 for attorney fees, which order is enforceable by her attorney subject to an annual rate of eight percent (8%) post-judgment interest.

The Court declines to grant pre-judgment interest in that it seems excessive to the court and [Mother] could have acted sooner to enforce the orders of the court.

Additional filings made; not addressed in this order: Father's Motion to Modify Support filed March 23, 2016; Mother's Objection to same filed March 24, 2016 and Mother's Petition for Educational Expenses filed on April 4, 2016. Hearing on those matters upon request of the parties.

Appellant's Confidential Appendix Volume 2 at 22-29.

[19] On June 3, 2016, Father filed a motion to correct error and on August 16, 2016, a hearing was held.

[20]     On August 29, 2016, the court entered an order vacating Paragraph 28 of its May 6, 2016 and reduced Father's education judgment by $561.25. It confirmed the May 6, 2016 order in all other respects.

*Discussion*

I.

[21]     The first issue is whether the trial court erred in ordering Father to pay certain medical expenses and educational expenses. Where, as here, the trial court issued findings of fact and conclusions at the request of one of the parties, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed *de novo*. *Id.* We set aside a trial court's judgment only if it is clearly erroneous. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.*

[22]     Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *Sandlin v. Sandlin*, 972 N.E.2d 371, 374 (Ind. Ct. App. 2012). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution

that they would have received if the family had remained intact. *Id.* A trial court's calculation of a child support obligation is presumptively valid and will be reversed only if it is clearly erroneous or contrary to law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). Again, "[a] decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the trial court." *Id.* In conducting our review, we will not reweigh the evidence and will consider only the evidence most favorable to the judgment. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App. 2008).

[23] Father challenges the court's rulings regarding: (A) medical expenses; and (B) educational expenses.

A. *Medical Expenses*

[24] Father asserts that, at the time K.T. was struck by lightning and Mother chose to be the full-time care provider, Father had insurance that would provide in-home professional assistance to his daughter and that the order involving healthcare did not include provisions for non-prescription items which should have been paid from child support. He states that he asserted in his motion to correct error that Ind. Evidence Rule 1006 could not be the basis for providing summaries of expense. Thus, Father asserts that the costs for those items should not be reimbursed to Mother and should have been paid for out of the support he was providing. He also argues that he asserted in his motion to correct error that Ind. Evidence Rule 1006 could not be the basis for Mother's providing summaries. He maintains there was unreasonable delay in that

Mother waited seven years to ask for reimbursement for some of the expenses and eventually requested reimbursement for ten years of expenses. He contends that the evidence does not support Finding 12 which indicates that Mother provided expense sheets to him each year or that she gave him adequate notice of medical expenses and that Finding 15 was not supported by the evidence because the evidence showed physicians recommended or suggested vitamins and other items but that not all of the items were "ordered" as Mother testified. Appellant's Brief at 46. Father contends that the evidence does not support Finding 20 indicating that all healthcare supplies and aids were ordered by physicians but argues that those that were should be reimbursed.

[25] With respect to Father's argument that there was unreasonable delay or that Mother did not give him adequate notice of expenses, we note that the doctrine of laches does not apply to cases involving the enforcement of support orders in Indiana. *Miller v. Miller*, 790 N.E.2d 133, 135 (Ind. Ct. App. 2003) (citing *Knaus v. York*, 586 N.E.2d 909, 914 (Ind. Ct. App. 1992)), *reh'g denied, trans. denied*. We also note that Father does not point to any prior order requiring Mother to provide notice. Further, we observe that Mother testified that it had been her practice to send copies of bills to Father, but the practice became expensive and time consuming so she began preparing statements at the end of every year. Mother testified that she kept a similar record of educational expenses and that Father did not object to the handwritten summaries. Father acknowledged that he received "the hand written summary from 2006 to 2012." March 24, 2016 Transcript at 56. He testified that he had insurance on the children and, when

asked if he had a summary regarding the insurance, stated: "I have a summary, um, there, there was Explanation of Benefits, but I have nothing to match up to." *Id.* at 59. He indicated that he did not ask Mother for medical bills in 2013, 2014, or 2015. We noted that, on October 1, 2013, she filed a motion to determine arrears with respect to medical expenses, educational expenses, and child support. On November 12, 2015, Mother filed a supplement to her motion to determine arrears. We cannot say that reversal on this basis is warranted.

[26] As for Father's argument regarding Ind. Evidence Rule 1006, we observe that Rule provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time or place. The court may order the proponent to produce them in court.

[27] On appeal, Father argues that the summaries presented at trial were voluminous because they had not been provided timely, and Indiana Rule 1006 should not have been a basis for refusing to provide the requested originals. However, he does not dispute that the content was voluminous and does not argue that the underlying records were not made available to him under Rule 1006. We cannot say that reversal is warranted on this basis.

[28] Father also challenges Finding 20, which states that "[a]ll medical treatments, prescriptions, and health care supplies and aids purchased by order of any of either daughters' healthcare providers are valid medical expenses" and that "Father owes Mother those expenses that exceed the '6% Rule', have not been paid by insurance nor Medicaid, and have been paid by Mother." Appellant's Confidential Appendix Volume 2 at 25. He also challenges Finding 15 because the court found that vitamins and food supplements were "ordered" in 2007. *Id.*

[29] Ind. Child Support Guideline 7 provides in part:

> The court shall order one or both parents to provide health insurance when accessible to the child at a reasonable cost. Health insurance may be public, for example, Medicaid, or Children's Health Insurance Program (CHIP), Hoosier Healthwise, or private, for example, Affordable Care Act (ACA) or employer-provided.

> \* \* \* \* \*

> **Explanation of 6% rule/uninsured health care expenses.** The data upon which the Guideline schedules are based include a component for ordinary health care expenses. Ordinary uninsured health care expenses are paid by the parent who is assigned to pay the controlled expenses (the parent for whom the parenting time credit is not calculated) up to six percent (6%) of the basic child support obligation (Line 4 of the Child Support Obligation Worksheet). Extraordinary health care expenses are those uninsured expenses which are in excess of six percent (6%) of the basic obligation, and would include uninsured expenses for chronic or long term conditions of a child. Calculation of the

apportionment of the health care expense obligation is a matter separate from the determination of the weekly child support obligation. These calculations shall be inserted in the space provided on the Worksheet.

[30]     The Commentary to Guideline 7 provides:

Apportionment of Uninsured Health Care Expenses. Six percent (6%) of the support amount is for health care. The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made. Consequently, the Guidelines require that custodial parent bear the cost of uninsured health care expenses up to six percent (6%) of the Basic Child Support Obligation found on Line 4 of the Child Support Obligation Worksheet and, if applicable, the child support obligation attributable to a student living away from home (Section Two Line I of the Post-Secondary Education Worksheet).

That computation is made by multiplying the total of Line 4 and Line I by 52 (weeks) and multiplying the product of that multiplication by .06 to arrive at the amount the custodial parent must spend on the uninsured health care costs of the parties' child(ren) in any calendar year before the noncustodial parent is required to contribute toward payment of those uninsured costs. For example, if Line 4 is $150.00 per week and Line I is $25.00 per week, the calculation would be as follows: $150.00 + $25.00 = $175.00 x 52 = $9,100.00 x .06 = $546.00.

Thus, on an annual basis, the custodial parent is required to spend $546.00 for health care of the child(ren) before the noncustodial parent is required to contribute. The custodial parent must document the $546.00 spent on health care and provide the documentation to the noncustodial parent.

After the custodial parent's obligation for ordinary uninsured health care expenses is computed, provision should be made for the uninsured health care expenses that may exceed that amount. The excess costs should be apportioned between the parties according to the Percentage Share of Income computed on Line 2 of the Worksheet. Where imposing such percentage share of the uninsured costs may work an injustice, the court may resort to the time-honored practice of splitting uninsured health care costs equally, or by using other methods. The court may prorate the custodial parent's uninsured health care expense contribution when appropriate.

As a practical matter, it may be wise to spell out with specificity in the order what uninsured expenses are covered and a schedule for the periodic payment of these expenses. For example, a chronic long-term condition might necessitate weekly payments of the uninsured expense. The order may include any reasonable medical, dental, hospital, pharmaceutical and psychological expenses deemed necessary for the health care of the child(ren). If it is intended that such things as aspirin, vitamins and band-aids be covered, the order should specifically state that such non-prescription health care items are covered.

There are also situations where major health care costs are incurred for a single event such as orthodontics or major injuries. For financial reasons, this may require the custodial parent to pay the provider for the amount not covered by insurance over a number of years. The 6% rule applies to expenses actually paid by the custodial parent each year.

[31] Mother testified that doctors recommended vitamins. When asked if they were necessary for K.T.'s treatment, Mother answered: "Yes. That's why they asked me to get them." March 24, 2016 Transcript at 14. Mother testified that Dr. Skinner wrote a prescription for massages, but insurance would not cover it.

When asked about Ensure and Boost on her summary of medical expenses, Mother testified that those were K.T.'s nutrients, that K.T. had a gastro-tube for a period of time and "when she was able to do some eating we had to supplement because she is a slow eater due to dysphasia and other medical issues, so the boost was to help supplement proteins and vitamins." *Id.* at 15. Mother's counsel asked her: "So the doctors ordered that?" *Id.* Mother answered affirmatively. She testified that K.T. was on protein shakes, that those are necessary to help her gain weight, and that the doctors want her BMI increased two whole points. As mentioned in the Commentary, while it may have been wise to spell out with specificity certain medical expenses, we cannot say the court erred in ordering that Father pay a certain amount of these reasonable medical expenses. In light of the Guidelines and evidence presented, we conclude that the evidence supports the findings.

B. *Educational Expenses*

[32] Father raises the same arguments relating to the summaries of educational expenses and the delay in requesting reimbursement of educational expenses, and notes that the hearing on college expenses had not yet been held.

[33] Generally, "a child support order and an educational expense order are separate and distinct." *Panfil v. Fell*, 19 N.E.3d 772, 777 (Ind. Ct. App. 2014), *trans. denied*. "Ind. Code § 31-16-6-2 governs educational support and provides that an educational support order may include amounts for the child's education in institutions of higher learning." *Id.* Ind. Code § 31-16-6-2 provides that the

child support order may include amounts for a child's education at postsecondary educational institutions "taking into account . . . the child's aptitude and ability," "the child's reasonable ability to contribute to educational expenses," and the "ability of each parent to meet these expenses." "Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate." *Id.* (quoting *Gilbert v. Gilbert*, 777 N.E.2d 785, 793 (Ind. Ct. App. 2002)). Ind. Child Support Guideline 8(b) provides in part that "[i]t is discretionary with the court to award post-secondary educational expenses and in what amount" and that, "[i]n making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." It also provides:

> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.

Child Supp. G. 8(b).

[34] The record is somewhat unclear as to when A.T. finished secondary school and began her college education. At the March 24, 2016 hearing, when asked when A.T. started her college education, Mother testified that she was in her second year. Mother's testimony and Petitioner's Exhibits 7 suggest that A.T. likely would have begun college in the fall of 2014. In Finding 32 of its May 6, 2016 order, the court found that Mother had paid $6,689.16 in educational expenses and cited Mother's Exhibits 6, 7, and 8. In Finding 33, it found that Father owed Mother $6.689.16 for educational expenses from May 8, 2008 through 2015. Petitioner's Exhibit 8 lists a total of unreimbursed educational expenses through December 31, 2015, of $7,584.16, with $161.20 of unreimbursed expenses for 2015, and $2,143.98 in unreimbursed expenses for 2014. Petitioner's Exhibit 7 listed expenses in part for car repairs for A.T. for July 24, 2014, October 6, 2014, and December 31, 2014.

[35] The court's May 6, 2016 order required Father to pay Mother $6,689.16 in expenses, which is the total of $7,584.16 listed in Petitioner's Exhibit 8 minus $895 in school lunches which the court did not allow. Thus, it appears that the trial court may have ordered that Father pay expenses related to A.T.'s college education. However, the discussion at the beginning of the March 24, 2016 hearing suggested that the court was not going to consider college expenses. Further, the court's May 6, 2016 order states that it did not address Father's March 23, 2016 motion to modify support, which argued that the child support order should be modified to reflect a support order for K.T. only because A.T. had reached the age of majority, nor Mother's April 4, 2016 petition for

educational expenses in which Mother argued that A.T. was a student at IUSB, that A.T. lived with Mother, and that A.T. required Father's financial assistance to complete her college education. The record also contains a transcript of a December 6, 2016 hearing, at which Mother's counsel asserted that one of the issues was "a motion for College Expenses . . . ." December 6, 2016 Transcript at 4.

[36] Under these circumstances and in light of the trial court's statement that it was not addressing Mother's motion regarding college expenses, we reverse the award of expenses related to A.T.'s college and remand for a determination of which expenses related to A.T.'s secondary education and to determine whether Father should pay for a portion of A.T.'s college expenses.

C. *Attorney Fees*

[37] Father argues that the court's judgment for fees in the amount of $16,250 amounts to approximately forty percent of the entire judgment and was unreasonable and excessive in view of the services rendered during the time period. Father also argues that the court's findings and conclusions addressing Mother's role and Father's ability to pay are not supported by the evidence. He contends that the evidence does not support the findings that Mother cannot work outside the home and that evidence was not presented regarding his level of income in relation to other wage earners or that he had the ability to comply with the orders of the court.

[38] Mother argues that Father is now challenging the trial court's 2008 determination of her inability to work and he has not shown that there are any changed circumstances in Mother's care for K.T. that would warrant revisiting that issue. She points out that the court determined Father earned in excess of $104,000 per year.

[39] Ind. Code § 31-15-10-1(a) provides:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

[40] We review a trial court's award of attorney fees for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* (citing *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993)). When making such an award, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors that bear on the reasonableness of the award. *Id.* Consideration of these factors promotes the legislative purpose behind the award of attorney fees, which is to insure that a party in a dissolution proceeding, who would not otherwise be able to afford an attorney, is able to have representation. *Id.* at 286-287. "When one party is in a superior position

to pay fees over the other party, an award of attorney fees is proper." *Id.* at 287 (quoting *Ratliff v. Ratliff*, 804 N.E.2d 237, 249 (Ind. Ct. App. 2004)). The trial court need not, however, give reasons for its determination. *Id.*

[41] The court's August 22, 2008 order found that Mother's loving care of her highly disabled child could not be duplicated by a paid in-home care provider and concluded that Mother was not staying home and caring for the children because she wished to avoid supporting the children and that Mother did not have time for employment. In its May 6, 2016 order, the trial court stated that "[i]t is not like this is the first time court action was required to force [Father] to live up to his legal duties to his children," observed the disparity of income between Mother and Father, and observed that Father earned $104,000. Appellant's Confidential Appendix Volume 2 at 28. We cannot say that the trial court abused its discretion.

### Conclusion

[42] For the foregoing reasons, we affirm the trial court's order with respect to the medical expenses and attorney fees, reverse the award of expenses related to A.T.'s college, and remand for a determination of college expenses and whether Father should pay for a portion of those expenses.

[43] Affirmed in part, reversed in part, and remanded.

May, J., and Pyle, J., concur.